IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| JEFFREY L. BRIM, | ) | |
|     Plaintiff, | ) | Civil Action No. 4:15-cv-57 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | By:    Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

    Plaintiff Jeffrey L. Brim asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence. Therefore, I recommend that the Court **DENY** Brim's motion for summary judgment, ECF No. 15, **GRANT** the Commissioner's motion for summary judgment, ECF No. 19, and **AFFIRM** the Commissioner's final decision.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and will be substituted for Carolyn W. Colvin as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461

2

U.S. 458, 460–62 (1983); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Brim protectively filed applications for DIB and SSI on October 31, 2011, alleging disability caused by back and heart problems. Administrative Record ("R.") 88, 96, ECF No. 9. At the time of his alleged onset date of October 24, 2011, he was forty-five years old, *id.*, and had previously worked in various logging jobs, R. 259–63, 278. Disability Determination Services ("DDS"), the state agency, denied his claims at the initial, R. 88–95, 96–103, and reconsideration stages, R. 106–14, 115–23. On March 19, 2014, Brim appeared with counsel and testified at an administrative hearing before ALJ R. Neely Owen. R. 69–87. A vocational expert ("VE") also testified at this hearing regarding the nature of Brim's past work and his ability to perform other jobs in the national and local economies. *See* R. 82–87.

ALJ Owen denied Brim's claim in a written decision issued on June 19, 2014. R. 44–52. The ALJ found that Brim had severe impairments of obesity, angina pectoris, and hypertension. R. 46. He further found that Brim's impairments of a left thumb injury, hyperlipidemia, and gastroesophageal reflux disease ("GERD") were non-severe and that none of Brim's impairments, alone or in combination, met or medically equaled the severity of a listed impairment. R. 47. As to Brim's residual functional capacity ("RFC"),[2] the ALJ found that he could perform a range of light work[3] with no further limitations. R. 47. ALJ Owen thus found

---

[2] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[3] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these lifting requirements can perform light work only if he also can "do a good deal of walking or standing, or do

that Brim could not perform any of his past relevant work because it was all categorized at the medium level of exertion or higher. R. 50. He did find, however, that Brim could perform light jobs existing in significant numbers in the national and local economies, including flagger, cafeteria worker, and hand sander. R. 51. Therefore, the ALJ determined that Brim was not disabled. *Id.* The Appeals Council denied Brim's request for review, R. 1–4, and this appeal followed.

III. Facts

*A.    Relevant Medical Evidence*

On December 1, 2008, Brim presented to the Memorial Hospital of Martinsville ("Memorial") with chest pain, and doctors performed a left heart catheterization, coronary angiography, and left ventriculogram. R. 346. These procedures indicated normal findings, revealing no significant coronary artery disease, normal left ventricle systolic function ejection fraction of 55%, mild mitral regurgitation, elevated left ventricular end-diastolic pressure, and no significant aortic valve gradient. R. 347. Brim was advised to continue monitoring his conditions and consider searching for a non-cardiac cause of symptoms. *Id.*

On October 26, 2011, Brim visited William Van Dyke, M.D., at Cardiology Danville for an initial consultation. R. 371. Brim reported that he had coronary artery disease and explained that he had been told he had 70% blockage in one of his arteries. *Id.* A physical examination revealed normal findings, and an electrocardiogram ("EKG") showed findings within normal limits. R. 372–73. Dr. Van Dyke advised Brim not to go to work and set him up for cardiac catheterization. R. 371. On October 28, Brim reported to Stroobants Heart Center of VA in order to have the right and left heart catheterization, coronary angiography, and left ventriculography

---

some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

performed. R. 379. These tests revealed the following diagnoses: normal left ventricle systolic function; coronary disease as noted, which included normal right coronary artery with minimal irregularities, normal left main and circumflex, mild-to-moderate mid-left anterior descending ("LAD") disease of 30–50% with fractional flow reverse ("FFR") of 0.84-0.85, suggesting a non-hemodynamically significant stenosis, and severely debilitating rest pain with no evidence of spasm or high-grade obstructive coronary disease, suggesting a non-cardiac source; and mild pulmonary hypertension with no evidence of intracardiac shunting, aortic stenosis, or mitral stenosis. R. 383–84. Further imaging taken at Memorial on November 24 after Brim complained of chest pain and shortness of breath identified no acute cardiopulmonary process, R. 440, and an emergency department doctor assessed atypical chest pain that did not appear cardiac related, R. 713, 718. Brim followed up with Dr. Van Dyke on December 8 with continued complaints of chest pain, but no significant coronary disease. R. 492. Dr. Van Dyke reported, "[i]t does sound like angina comes on with exertion. It gets better with rest. Also goes away with Nitroglycerin." *Id.* Dr. Van Dyke noted that Brim had mild LAD disease and that he was slightly tender when pressure was applied to his chest, but other findings on physical examination were normal. R. 492, 494. Dr. Van Dyke advised Brim to stay active and schedule a follow-up appointment as needed. R. 492.

Brim also regularly treated with Ayokunle Fatade, D.O., for his hypertension and chest pain. Brim saw Dr. Fatade seven times from December 2011 through August 2012. R. 483–90, 544–48. Throughout the course of treatment, Dr. Fatade assessed at different times unspecified chest pain, R. 483, 489, 544–48, benign essential hypertension, R. 483–84, 489, 544–48, other and unspecified angina pectoris, R. 484, 486, 489, 544–48, and chronic pain syndrome, R. 484, 486, 489, 544–48. Dr. Fatade noted in January and March 2012 that Brim's symptoms were not

5

well controlled with medication. R. 484, 489. During Brim's first four visits, Dr. Fatade noted that his BMI exceeded 30.[4] R. 483–90. Dr. Fatade also indicated normal physical findings during these visits, including his observation that Brim was able to get up easily and move without difficulty. *Id.*

Brim returned to Memorial twice in 2012. On April 27, he presented with a sudden onset of chest pain, R. 668, but imaging of his chest showed it to be stable without evidence of acute cardiopulmonary disease, R. 671. On May 1, he presented with a cough, R. 677, and imaging of his chest again revealed him to be negative for acute cardiopulmonary disease, R. 679. Brim then followed up for his hypertension in October and December 2012 with providers at Piedmont Access to Health Services. R. 502–08. On October 3, he denied having chest pain and shortness of breath, stating further that nitroglycerin relieved his pain and he tolerated his medication well. R. 504. Brim was diagnosed with hypertension, cardiovascular disease unspecified, and GERD, and a physical examination showed normal findings. R. 504–05. On December 6, however, Brim claimed that his chest hurt every day non-stop and that nitroglycerin did not help. R. 502. Findings on physical examination were normal, and Brim was assessed with chest pain unspecified, GERD, cardiovascular disease unspecified, and hypertension. R. 502–03. He was also informed that because of his GERD, he needed to eat at least three times per day, rather than once as he reported. *Id.* Additionally, during both visits Brim was encouraged to improve his diet and engage in about thirty minutes of exercise on most days. R. 503, 506.

On July 14, 2013, Brim presented to Memorial with chest pain and discomfort. R. 688. Doctors noted a clinical impression of acute chest pain and GERD. R. 689. Imaging of the chest revealed that the size and configuration of his heart were within normal limits given his age, his

---

[4] The evidence of record covering Brim's last three visits in July and August 2012 only contains Dr. Fatade's diagnoses of Brim's conditions, but no other treatment notes.

lungs were clear with no evidence of pleural fluid or pneumothorax, and he had no acute abnormalities of the surrounding structures. R. 691. On January 19, 2014, Brim visited Morehead Memorial Hospital with a chief complaint of back pain caused by lifting wood three days prior. R. 560. Notably, Brim denied experiencing any respiratory or cardiovascular symptoms, and physical findings regarding these areas were normal. R. 561–63.

B.   *DDS Physician Opinions*

On February 9, 2012, as part of the initial review of Brim's claims, DDS expert Brian Strain, M.D., assessed his physical functioning. R. 92–93, 100–01. Dr. Strain found that Brim could lift and carry twenty pounds occasionally and ten pounds frequently and he could stand or walk for about six hours and sit for about six hours in an eight-hour workday. R. 92, 100. Dr. Strain assessed no other limitations. R. 92–93, 100–01. On reconsideration, in an opinion dated July 27, 2012, DDS expert Robert Keeley, M.D., reassessed Brim's physical functioning and confirmed Dr. Strain's findings. R. 111–12, 120–21.

C.   *Brim's Submissions and Testimony*

As part of his claim for benefits, Brim submitted two function reports. R. 268–75, 306–13. He reported that he lives with his family and described a very limited daily routine of watching television and trying not to move a lot to avoid aggravating his chest pain. R. 268, 306. He does not take care of anyone else or any pets, and the pain in his chest keeps him up at night. R. 269, 307. He initially needed help with getting dressed when he was hurting, R. 269, but later indicated that he experienced no problems with personal care, R. 307. Brim does not cook except to occasionally fix himself sandwiches, does no house or yard work, does not drive for fear of causing an accident if his pain comes, does not shop, and only goes outside regularly to sit on the porch. R. 270–71, 308–09. His only stated hobby is watching television, which he does all day,

7

and he tries to socialize with others, including family, on a daily basis. R. 272, 310. Brim initially reported experiencing issues with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using his hands, R. 273, but omitted problems with kneeling and completing tasks when filling out his second function report, R. 311. He also originally claimed to be able to walk about 100 feet before needing a five-minute break, R. 273, but later asserted that he could walk "nowhere" before needing to sit for a while to catch his breath, R. 311. Because Brim cannot read, he cannot follow written instructions, but he stated that he could follow spoken instructions. R. 273, 311. He also does not use nor has he been prescribed an assistive device such as crutches, a walker, a wheelchair, or a cane. R. 274, 312.

During the administrative hearing before ALJ Owen, Brim testified that he completed the eighth grade before dropping out of school because he could not read or understand his teachers. R. 74–75. He continued to experience chest pain presently and was not receiving treatment because he had no insurance. R. 76. Brim also explained that he was not aware of any free medical clinics near his home that could offer him treatment. R. 80. He stated he could usually sit for fifteen to twenty minutes before his leg would go numb and could stand for thirty minutes before getting a tingling in his leg and hip. R. 77. He had to lie down at least twice a day for up to an hour and a half because of the pain in his chest. R. 78–79. This pain also woke him up during the night, which caused him to feel fatigued and tired at times. R. 78. Brim lived with his girlfriend and her daughter, and his girlfriend took care of the household needs. R. 79.

IV. Discussion

Brim contests ALJ Owen's RFC determination on two grounds. First, he argues that the ALJ improperly evaluated his credibility and his statements concerning the severity of his pain.

Second, he contends that the ALJ failed to properly assess the functional limitations caused by his obesity. Neither argument is persuasive.

*A.    Severity of Symptoms*

Brim primarily argues that the ALJ failed to give adequate reasons for rejecting his statements concerning the severity of his pain and for finding him to be less than credible. Pl. Br. 13–16, 19–20, ECF No. 16. The regulations set out a two-step process for evaluating a claimant's allegation that he is disabled by symptoms, such as pain, caused by a medically determinable impairment. *Fisher v. Barnhart,* 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. §§ 404.1529, 416.929). The ALJ must first determine whether objective medical evidence[5] shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of pain alleged. 20 C.F.R. §§ 404.1529(a)–(b), 416.929(a)–(b); *see also Craig*, 76 F.3d at 594. If the claimant clears this threshold, then the ALJ must evaluate the intensity and persistence of the claimant's pain to determine the extent to which it affects his physical or mental ability to work. SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016); *see also Craig,* 76 F.3d at 595.

The ALJ cannot reject the claimant's subjective description of his pain "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Nonetheless, a claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably

---

[5] Objective medical evidence is any "anatomical, physiological, or psychological abnormalities" that can be observed and medically evaluated apart from the claimant's statements and "anatomical, physiological, or psychological phenomena [that] can be shown by the use of medically acceptable diagnostic techniques." 20 C.F.R. §§ 404.1528(b)–(c), 416.928(b)–(c). "Symptoms" are the claimant's description of his or her impairment. *Id.* §§ 404.1528(a), 416.928(a).

be expected to cause the pain the claimant alleges [he] suffers." *Craig*, 76 F.3d at 595.[6] The ALJ must consider all the evidence in the record, including the claimant's other statements, his daily activities, his treatment history, any medical-source statements, and the objective medical evidence, *id.* (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)), and must give specific reasons, supported by relevant evidence in the record, for the weight assigned to the claimant's statements, *Eggleston v. Colvin,* No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013).

ALJ Owen discounted the credibility of Brim's statements regarding the intensity, persistence, and limiting effects of his symptoms for multiple reasons. First, the ALJ noted that in contrast to Brim's claim that he could sit and stand only for minimal periods, the DDS physicians did not indicate any limitations in this area, R. 48, and Brim's statements that he struggled with bending and getting out of bed were not borne out by the record, R. 49–50. Next, the ALJ referenced Brim's receipt of unemployment benefits during 2012 and 2013, which, although not dispositive, ALJ Owen found sufficient to call into doubt his statements regarding the severity of his symptoms because in order to receive unemployment benefits in Virginia, Brim would have to demonstrate both the capacity to work and that he was actively seeking employment. R. 48. Moreover, the ALJ concluded that the medical evidence of record, which

---

[6] The Social Security Administration now cautions that the second prong of this analysis should not be approached with an undue focus on the claimant's "credibility." *See* SSR 16-3p, 2016 WL 1119029, at *1. The scope of this inquiry should be limited to those matters concerning the claimant's symptoms, rather than other factors that might otherwise be probative of the claimant's overall honesty. *Id.* at *10. "In evaluating an individual's symptoms, [ALJs] will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." *Id.* Statements that are internally inconsistent or that are inconsistent with the other evidence of record, however, may lead the ALJ to "determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* at *7.

revealed mostly normal findings, undermined Brim's allegations that chest pain limited his activities of daily living. R. 48–49.

Brim first contends that the ALJ erred by not accepting his testimony and only accommodating his limitations from his chest conditions with a lifting restriction. Pl. Br. 14–15. He identifies his statements from the record that his conditions required him to lie down twice per day for an hour and a half and that his medication did not control his symptoms. *Id.* He asserts that the ALJ's reliance on his receipt of unemployment benefits was erroneous because unemployment benefits and disability benefits are not mutually exclusive. *Id.* at 19–20. He further argues that the ALJ erred by relying on the findings of the DDS physicians because they never examined him in person. *Id.* at 20. Overall, Brim argues that the medical record supports his allegations of severe limitations, and therefore, the ALJ erred in concluding he could perform light work.

Despite Brim's protests, substantial evidence supports ALJ Owen's reasoning. First, although Brim is correct that receipt of unemployment benefits alone does not prove that a claimant can indeed work, *see Lackey v. Celebrezze*, 349 F.2d 76, 79 (4th Cir. 1965), the ALJ is nevertheless permitted to consider this factor in evaluating his credibility, *see Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *17 (W.D. Va. Sept. 12, 2014). Here, ALJ Owen noted that Brim's collection of unemployment benefits was not dispositive, but nevertheless found it to weigh against his allegations of severe symptoms. R. 48; *see also* R. 253–54 (detailing Brim's history of receiving unemployment benefits). The ALJ's consideration of this inherent inconsistency as but one of many factors in an assessment of the plaintiff's credibility is not error. *See Mabe v. Colvin*, No. 4:12cv52, 2013 WL 6055239, at *8 (W.D. Va. Nov. 15, 2013);

11

*see also Cooke*, 2014 WL 4567473, at *17 ("Had the ALJ solely relied on Cooke's collection of unemployment benefits . . . the credibility determination would be debatable.").

The ALJ is also permitted to rely on the opinions of the DDS experts when that assessment is consistent with the record. *Gordon*, 725 F.2d at 235. Here, ALJ Owen assigned these opinions great weight because he found them adequately supported by and consistent with the record. R. 50. No examining or treating physician suggested any greater limitations, and, as discussed below, the medical record does not contradict the findings of the DDS physicians. Thus, ALJ Owen did not err in relying on these opinions in discounting Brim's statements concerning the effect his pain and other symptoms had on his physical functioning.

In that same vein, as the ALJ correctly noted, the medical evidence of record reveals almost exclusively normal findings regarding Brim's conditions. ALJ Owen identified several treatment notes in support, including testing from October 2011 that showed no evidence of significant angiographic stenosis or objective ischemia and ejection fraction of 54%; imaging from November 2011 that showed no acute cardiopulmonary disease; findings from December 2011 that noted no significant coronary disease; and numerous opinions that Brim's chest pain could come from non-cardiac sources. R. 49.

Moreover, additional evidence in the record also supports ALJ Owen's conclusion. Findings on physical exam were overwhelmingly normal, *see, e.g.*, R. 373, 494, 502, 562–63; imaging taken at Memorial during April and May 2012 displayed no evidence of acute cardiopulmonary disease, R. 671, 679; medical providers encouraged Brim to improve his diet and exercise more often, R. 503, 506; Brim denied having chest pain and shortness of breath, which he claims are his most limiting conditions, to medical providers more than once, R. 504, 562; and imaging from July 2013 showed his chest to be stable with no evidence of acute

12

cardiopulmonary disease, R. 691. These findings thus significantly undermine Brim's assertion that "[t]he medical evidence of record fully supports [his] allegations that he is unable to maintain substantial gainful employment." Pl. Br. 20. The Court will not reweigh conflicting evidence, *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)), and here, a thorough examination of the record reveals that substantial evidence supports the ALJ's reasons for rejecting Brim's statements concerning the intensity, persistence, and limiting effects of his symptoms, *see Stevens v. Colvin*, No. 6:14cv21, 2015 WL 5510928, at *4 (W.D. Va. Sept. 16, 2015) ("[E]ven if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence.").

*B.     Obesity*

Brim contends that ALJ Owen also erred by failing to discuss the effects his obesity had on his ability to work. Pl. Br. 16–19. Specifically, Brim argues that the ALJ failed to consider whether his obesity could exacerbate the impact his impairments might have on his functioning, and he concludes that his "obesity clearly impacts his angina pectoris and hypertension and his residual functional capacity." *Id.* at 17. Brim also cites *Bradberry v. Astrue*, No. 7:11cv235, 2011 WL 6296728 (W.D. Va. Dec. 15, 2011), in support of his argument, asserting that his case should be remanded because ALJ Owen, like the ALJ in *Bradberry*, "gave very little weight, if any, to [his] obesity in formulating [his RFC]," and the limitations that ALJ Owen did identify were consistent with symptoms stemming from his other severe impairments of angina pectoris and hypertension, Pl. Br. 18.

The ALJ's conclusion that obesity is a severe impairment does not by itself necessitate additional limitations. *See* SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) ("Obesity in

13

combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."). An ALJ is also not required to include a detailed analysis regarding a plaintiff's obesity. *See Richards v. Astrue*, No. 6:11cv17, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) ("[T]here is no language in SSR 02-1p that directs the ALJ to include a lengthy analysis, or indeed, any precise analysis regarding obesity when issuing an opinion. It only mandates that the ALJ consider the effect of obesity during steps two through five of the five-step inquiry.").

Here, ALJ Owen acknowledged that obesity in combination with a coexisting impairment could cause greater limitations than might be expected without the obesity, and he noted that he took this consideration into account in reaching his conclusions. R. 46–47. Although Brim's treating physicians routinely documented his weight, they did not identify any restrictions specifically related to his obesity. Furthermore, no other evidence in the record suggests that Brim's obesity had any impact whatsoever on his physical functioning, further undermining Brim's challenge. *See Richards*, 2012 WL 5465499, at *8 ("There is simply no medical evidence in this record suggesting that Richards's obesity was disabling, or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation."); *Phelps v. Astrue*, No. 7:09cv210, 2010 WL 3632730, at *6–7 (W.D. Va. Sept. 9, 2010). Brim's reliance on *Bradberry* is also misplaced, as that case is distinguishable.[7] Moreover, in order to successfully

---

[7] In *Bradberry*, the court primarily took issue with the ALJ's application of the general rule that although a claimant must follow prescribed treatment in order to obtain benefits, with respect to obesity, recommendations to lose weight or get more exercise do not constitute prescribed treatment. 2011 WL 6296728, at *4. There, the ALJ found the claimant not disabled in part because she did not follow repeated recommendations of her physicians to exercise regularly and improve her diet, leading the ALJ to conclude that her obesity could not have been that disabling if she had the means to alleviate her symptoms and failed to utilize them. *Id.* The court further noted that the ALJ gave little, if any, weight to the claimant's obesity in formulating the RFC, rejecting the Commissioner's argument that the limitations in the RFC represented the ALJ's consideration of the claimant's obesity because those limitations were consistent with the claimant's other symptoms. *Id.* Here, ALJ Owen did not commit these errors.

challenge an ALJ's treatment of a plaintiff's obesity, "the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC." *Harris v. Colvin*, No. 7:13cv24, 2014 WL 4749110, at *10 (W.D. Va. Sept. 23, 2014). Here, although Brim acknowledges this requirement, he merely postulates that his obesity *could* exacerbate his other severe impairments because he carries extra weight, and he does not cite any medical evidence in support of this claim. In fact, the only evidence Brim does reference pertains to his subjective statements, Pl. Br. 19, which, as discussed above, the ALJ properly discounted. Thus, substantial evidence supports ALJ Owen's analysis of Brim's obesity and its impact on his RFC.

## V. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's final decision. Accordingly, I respectfully recommend that the presiding District Judge **DENY** Brim's motion for summary judgment, ECF No. 15, **GRANT** the Commissioner's motion for summary judgment, ECF No. 19, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

Furthermore, although ALJ Owen's obesity analysis is minimal, as noted above, nothing in the record suggests that any further analysis is necessary. *See Phelps*, 2010 WL 3632730, at *7.

15

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: February 17, 2017

Joel C. Hoppe
United States Magistrate Judge